**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| Courtney E. Maxwell, ) | C.A. No.: _____ |
| ) | |
| Plaintiff, ) | |
| ) | **COMPLAINT** |
| v. ) | (JURY TRIAL DEMANDED) |
| ) | |
| Dade Paper & Bag, LLC f/k/a Dade Paper ) | |
| & Bag Co., ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff, by and through her undersigned counsel, alleges as follows:

**INTRODUCTION**

1. This is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended by the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 1981A (hereinafter "Title VII"); Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, as amended by the ADA Amendments of 2008 ("ADA"); and the South Carolina Human Affairs Law, S.C. Code § 1-13-10 *et seq.* ("SCHAL") to provide appropriate relief to Plaintiff Courtney E. Maxwell ("Ms. Maxwell") against Defendant Dade Paper and Bag, LLC f/k/a Dade Paper & Bag Co. ("Dade Paper") for unlawful discrimination against her due to her pregnancy.

2. Dade Paper hired Ms. Maxwell on 25 July 2016 as a sales consultant. During her tenure at Dade Paper, Ms. Maxwell successfully introduced Dade Paper to more lucrative clients and identified those clients' technical needs as well as the products that would fulfill them. Despite Ms. Maxwell's achievements, Dade Paper subjected her to discrimination and retaliation because she was a pregnant woman and suffered a medical condition related to her pregnancy. Dade Paper

summarily fired Ms. Maxwell on 3 November 2016 claiming she was subject to a noncompete agreement that exposed Dade Paper to litigation with a competitor.

## PARTIES

3. Courtney E. Maxwell ("Ms. Maxwell") is a female resident and citizen of Richland County, South Carolina as well as an employee as defined by Title VII and SCHAL.

4. Defendant Dade Paper & Bag LLC, f/k/a Dade Paper & Bag Co. ("Dade Paper") is a Florida limited liability company with its principal office in Miami, Florida. Dade Paper does business in many states including South Carolina, employs more than fifteen employees, and is engaged in an industry affecting interstate commerce. It is an employer as defined by Title VII and SCHAL.

## JURISDICTION AND VENUE

5. Jurisdiction of this Court arises under 28 U.S.C. §§ 1331, 1337, 1343 and 42 U.S.C. §§ 1981(a), 12112, 2000e(k), 2000e-2 which confers original jurisdiction of civil actions arising under the laws of the United States. Ms. Maxwell requests a trial by jury of all matters which may be submitted to a jury. This Court also has jurisdiction over Ms. Maxwell's state law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper in this judicial district pursuant to 42 U.S.C. § 2000e-5(f)(3) in that the unlawful employment practices occurred in South Carolina and 28 U.S.C. §1391(b) and §1391(c) because Dade Paper conducts business within this district and a substantial part of the events and omissions giving rise to this action also occurred within this district.

## CONDITIONS PRECEDENT

7. On 22 March 2017, Ms. Maxwell timely filed charges of pregnancy/sex discrimination, disability discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC).

8. On 12 June 2017, the EEOC issue Ms. Maxwell a Notice of Right to Sue which was received by Ms. Maxwell on 15 June 2017. Ms. Maxwell has fully complied with all prerequisites to jurisdiction in the Court under Title VII.

## FACTUAL BACKGROUND

9. Dade Paper is engaged in an industry affecting interstate commerce, to wit, the bulk marketing and sale of packaging, paper products, janitorial supplies and other facility management products in many states including South Carolina.

10. From October 2013 to July 2016, Ms. Maxwell worked as a sales representative for Xpedx, an industry leader in the sale of packaging, paper products, janitorial supplies and other facility management products. Xpedx markets and sells the same or substantially similar products to those offered and sold by Dade Paper.

11. Ms. Maxwell interviewed for employment as a sales consultant with Dade Paper on or before 1 July 2016. The interview was conducted by two Dade Paper employees, Connie Cheek and Scott McCloud who worked as a human resources manager and regional sales manager respectively for Dade Paper in its Atlanta, Georgia office.

12. During an employment interview, Scott McCloud indicated he wanted Ms. Maxwell to join Dade Paper so she could use her expertise to "open the door" to larger clients because Dade Paper's sales force in South Carolina primarily served small "mom & pop" restaurants and businesses. Ms. Maxwell succeeded in this regard introducing Dade Paper to many

3

large restaurants and businesses in the Columbia area including Akebono Brake Corporation, ATO Limited, Cardinal Neuman School, Midlands Technical College, Columbia Farms, Matt Gentry, Labrasca's Pizza, Eggroll Chen, Jersey Mikes, and Sparrows.

13.     Ms. Maxwell informed Dade Paper during the interview process she was pregnant and expecting to deliver her second child on or about 30 November 2016. Scott McCloud indicated Dade Paper supported its employees' family obligations and that there would be no problem in accommodating her pregnancy and taking maternity leave.

14.     Robert Gonzalez worked as a Sales Manager for Dade Paper in its Columbia, South Carolina office at all times relevant to this action. Mr. Gonzalez was Ms. Maxwell's immediate supervisor. Both reported to Dade Paper's Regional Manager Scott McCloud.

15.     Ms. Maxwell started working for Dade Paper as a Sales Consultant on 25 July 2016. After completing new hire paperwork at Dade Paper's office in Atlanta, Georgia; Ms. Maxwell started working out of the Columbia office where Robert Gonzalez introduced her to Dade Paper's existing clients and familiarized her with Dade Paper's sales goals, reemphasizing the need to sign up "bigger" clients.

16.     Robert Gonzalez frequently rode with Ms. Maxwell to her sales appointments. During these trips Mr. Gonzalez rarely mentioned business topics but would rather raise personal or sexual topics. Mr. Gonzalez also marginalized Ms. Maxwell pregnancy by referring to her as "Mommy" and making disparaging comments about women. Although Ms. Maxwell would object to these comments and repeatedly asked Mr. Gonzalez to "change the subject," he would only admonish Ms. Maxwell to work harder and resume the behavior at a later time.

17.     For example, Robert Gonzalez instigated a conversation with Ms. Maxwell and a co-worker on 24 October 2016 upon the co-worker's return to work after staying home due to an

eye infection. Mr. Gonzalez crudely remarked the co-worker would have to do a better job selecting female oral sex partners if he wanted to avoid developing another eye infection. Ms. Maxwell immediately informed Mr. Gonzalez she was offended by the comment and asked that he not speak that way to her; nevertheless, the conduct continued.

18. Dade Paper marginalized Ms. Maxwell's pregnancy by failing to offer her the same accommodations it offered similarly situated employees with similarly debilitating medical conditions. Ms. Maxwell began experiencing debilitating pain and discomfort in her groin and lower back in early August of 2016. Her physician informed her the pain was associated with her pregnancy and verbally instructed her to reduce the amount of time she spent driving until after her delivery. Although Ms. Maxwell documented this pregnancy-related medical condition to Dade Paper, she was not allowed to alter her work routine or schedule to alleviate the pain and discomfort caused by the condition. When her supervisor, Robert Gonzalez, learned that Ms. Maxwell would stop en route to sales appointments at fixed locations with an internet connection so she could move around to alleviate her pain while making sales calls and retrieve information from her computer, he admonished her for the practice and required her to make all sales calls while driving. His instructions served no legitimate business purpose as she frequently used her computer during sales calls and could not do so safely while driving. Additionally, Ms. Maxwell noted her stops did not hamper her schedule. Nevertheless, Mr. Gonzalez continued to forbid her from stopping, insisting she had to "keep moving" and not "lose momentum" due to her pregnancy during her employment with Dade Paper.

19. For example, on 10 August 2016 Robert Gonzalez accompanied Ms. Maxwell to a sales visit. While driving to the appointment, Ms. Maxwell was overcome by dizziness and pain that forced her to pull off by the side of the road. Mr. Gonzalez refused Ms. Maxwell's request to

5

reschedule the appointment due to her physical discomfort and inability to drive insisting that he be allowed to drive Ms. Maxwell's vehicle to ensure they would arrive in time for the appointment.

20.     Shortly after Robert Gonzalez insisted Ms. Maxwell keep a sales appointment despite experiencing pain and dizziness while driving, Ms. Maxwell was hospitalized due to her pregnancy. Her physician diagnosed pregnancy-related vulvar varicosities (enlarged veins in the vulva) as the cause of Ms. Maxwell's intense and persistent pain. The physician released Ms. Maxwell from the hospital, but instructed her to stay home in bed on 15 August 2016 until her blood pressure returned to a normal level. Ms. Maxwell informed her supervisor, Robert Gonzalez, and a human resource representative, Connie Cheek of the doctor's instructions and that she would not be in for work. Despite receiving a note from the doctor confirming the bed rest order, Mr. Gonzalez pressured Ms. Maxwell to come to work anyway on the 15th.

21.     Ms. Maxwell reported Robert Gonzalez's discriminatory conduct to Dade Paper on 22 August 2016. She spoke with Dade Paper's regional manager, Scott McCloud, who supervised Mr. Gonzalez. Ms. Maxwell told Mr. McCloud of the ongoing inappropriate comments and instructions for her to work contrary to common sense and her physician's instructions. Mr. McCloud responded he was "disappointed" that Ms. Maxwell brought Mr. Gonzalez's conduct to his attention and said nothing more about it. Neither Mr. McCloud nor anyone else associated with Dade Pape did anything in response to Ms. Maxwell's complaint.

22.     As a result of Ms. Maxwell complaint to Scott McCloud, Robert Gonzalez subjected Ms. Maxwell to unlawful retaliation. In particular, Mr. Gonzalez called Ms. Maxwell late in the evening with last-minute instructions to pick him up 30 minutes earlier (at 7:30am) than usual on the following morning. Ms. Maxwell complied, but asked Mr. Gonzalez for greater notice of such changes in the future so she would have time to change the day care arrangements for her

6

minor child. Mr. Gonzalez continued the practice of last-minute schedule changes explaining he wanted to get an "early start" on sales calls to day care facilities. Mr. Gonzalez's explanation was a pretextual excuse for this harassing behavior because nothing was accomplished by these earlier starts. Day care operators are busy with parents dropping off children in the morning and therefore are not willing to schedule sales appointments until after the time proposed by Mr. Gonzalez. The early pick-up time also did not fit the schedules of Dade Paper's existing clients who were usually not open at 8:00 a.m.

23. Robert Gonzalez also retaliated against Ms. Maxwell by ordering her to "work late" just before the end of several business days even though there was no legitimate reason for doing so. The sole result of the last-minute schedule changes ordered by Mr. Gonzalez was to complicate Ms. Maxwell's arrangements for dropping off and picking up her child from daycare.

24. Robert Gonzalez marginalized Ms. Maxwell's pregnancy-related medical condition by treating employees who were not pregnant more favorably than Ms. Maxwell.

25. For example, Ms. Maxwell's physician ordered her to reduce the amount of driving she did in order to reduce the pain and discomfort caused by her pregnancy on 10 October 2016. Robert Gonzalez refused to adjust Ms. Maxwell's workload to accommodate this restriction and urged her to keep on the road despite the doctor's order. Later that month Mr. Gonzalez accommodated the medical condition of a coworker who was not pregnant and did not require him to work contrary to doctor's orders.

26. On 30 August 2016, Ms. Maxwell received an email from a previous customer who worked at a roasting plant for Starbuck Coffee Company inviting Ms. Maxwell to quote the price Dade Paper would charge to provide the same supplies and services Ms. Maxwell sold when she

worked for her previous employer, Xpedx. Defendant Robert Gonzales was excited by the prospect of picking up such a large account and insisted that he attend all meetings with Starbucks.

27.     On 21 October 2016, Ms. Maxwell received a letter from her previous employer, Xpedx, claiming she was subject to a non-compete agreement. A copy of that letter was simultaneously sent to Dade Paper. Ms. Maxwell provided her supervisor Robert Gonzalez with a copy of the Xpedx letter on October 21 and told him she did not recall signing such an agreement and pointing out certain deficiencies with the alleged agreement. Ms. Maxwell indicated she was going to consult an attorney and suggested Dade Paper stop pursuing the Starbuck account until the issues created by the Xpedx Letter were resolved.

28.     Robert Gonzalez rejected Ms. Maxwell's suggestion to halt work on the Starbuck's account due to the Xpedx letter. Mr. Gonzalez informed Ms. Maxwell he would hide the Starbuck's account under a "910 - company" code until the Xpedx non-compete agreement lapsed. Ms. Maxwell refused to continue to pursue the Starbuck's account until she obtained a legal opinion about the validity of the alleged agreement. Mr. Gonzalez tried to overcome Ms. Maxwell's concerns by telling her that such agreements were common in their industry and Dade Paper had used the same "company" account strategy to overcome a non-compete agreement that another employee had with a previous employer.

29.     On 25 October 2016, Defendant Robert Gonzalez once again claimed Ms. Maxwell's performance was "slowing down" due to the pregnancy and she was not "moving" like she used to. He again admonished Ms. Maxwell to work "harder" so she would not "loose the momentum" she had built. Having grown frustrated with these repeated comments, but remembering Dade Paper had done nothing after her complaint to the Regional Manager, Ms.

Maxwell informed Mr. Gonzalez she would schedule an appointment with one of Dade Paper's human resource representatives so they could discuss their working relationship.

30. On 27 October 2016, Ms. Maxwell's doctor determined her condition had deteriorated to the point Ms. Maxwell had to remain in bed until her projected delivery date on 30 November 2017. Ms. Maxwell provided Dade Paper and Robert Gonzalez with documentation of the bed rest order.

31. On 2 November 2016, Robert Gonzalez called Ms. Maxwell and instructed her to bring her company laptop and other material to him at the Columbia office. Ms. Maxwell reminded him she had been ordered to stay in bed until her child was born. Nevertheless, Mr. Gonzalez insisted so Ms. Maxwell invited him to come by her home to pick up the laptop.

32. On 3 November 2016, Ms. Maxwell received a letter from Dade Paper terminating her employment. Dade Paper claimed it was terminating Ms. Maxwell's employment due to the "risk of time consuming litigation and incurring associated costs and potential liability if [Dade Paper] continued to employ you in violation of" the noncompete asserted by Xpedx. This explanation is pretextual on its face as Dade Paper continued to pursue an account with the only business Xpedx raised in its letter, Starbucks, after Ms. Maxwell's termination and only stopped working on the account when Starbucks rejected Dade Paper's proposal.

**FIRST CAUSE OF ACTION: TITLE VII**
**Discrimination in Violation of the Civil Rights Act of 1964 As Amended by**
**the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e-2(a).**

33. Plaintiff re-alleges and incorporates paragraphs 1 thru 32 as if fully set forth herein.

34. Ms. Maxwell was pregnant and qualified for her position when Dade Paper fired her. She is a member of the protected group based on her sex and she has been discriminated against due to her sex in violation of Title VII of the Civil Rights Act of 1964, as amended.

9

35. Dade Paper is an employer subject to Title VII of the Civil Rights Act of 1964, as amended.

36. During her employment with Dade Paper, Ms. Maxwell was subject to repeated discriminatory comments and actions by Robert Gonzalez. The discrimination included derogatory statements about her pregnancy, admonitions and commands to disregard pregnancy-related medical advice, and crude sexual comments. These episodes were severe in nature, altered the terms and conditions of her employment, and created a hostile work environment, thus constituting actionable discrimination under Title VII.

37. The conduct of Robert Gonzalez may be properly imputed to Dade Paper under the facts of this case. Dade Paper had a duty to take adequate steps to prevent any such discriminatory conduct because Ms. Maxwell reported the conduct to Scott McCloud, an employee of Dade Paper who supervised both Ms. Maxwell and Mr. Gonzalez. Ms. Maxwell made it clear to both Mr. Gonzalez and Mr. McCloud that the discriminatory comments were visited on her because she was a pregnant female and that she found the comments unwelcome, uninvited, persistent and non-consensual. Such knowledge created a duty upon Dade Paper to prevent subsequent acts of discrimination toward their employees.

38. The conduct of Robert Gonzalez may also be properly imputed to Dade Paper because once it was apprised of the conduct, Dade Paper failed to take timely and appropriate remedial action. Dade Paper failed to promptly and thoroughly investigate Ms. Maxwell's complaint, failed to adequately apprise the Ms. Maxwell of the results of any investigation, failed to ensure that the discriminator would not have access to and be alone with the Ms. Maxwell as she drove to sales calls in her own vehicle, dismissed without concern Ms. Maxwell's complaints

about the impact of Mr. Gonzalez's conduct, and otherwise acted with total disregard to its obligations to provide a workplace free of discrimination under the law.

39. In addition, Robert Gonzalez marginalized Ms. Maxwell while treating non-pregnant similarly-situated employees more favorable. Specifically, Mr. Gonzalez called Ms. Maxwell "mommy" and would make unwanted comments about sex and her pregnancy. He would also not allow Ms. Maxwell to alter her schedule or work conditions to accommodate her pregnancy-related medical condition while allowing non-pregnant co-workers to do so for other medical conditions.

40. Ms. Maxwell suffered damages as a result of Dade Paper's unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, and the costs of brining this action.

41. Dade Paper intentionally violated Ms. Maxwell's rights under Title VII, with malice or reckless indifference, and, as a result is liable for punitive damages.

**SECOND CAUSE OF ACTION:  TITLE VII**
**Retaliation in Violation of the Civil Rights Act of 1964 As Amended by**
**the Pregnancy Discrimination Act of 1978, 42 U.S.C. §§ 2000e-2(a), 2000e(k).**

42. Plaintiff re-alleges and incorporates paragraphs 1 thru 41 as if fully set forth herein.

43. Ms. Maxwell was pregnant and qualified for her position when Dade Paper fired her.

44. On 22 August 2016, Ms. Maxwell engaged in a protected activity by complaining to Scott McCloud, her Regional Manager, about Robert Gonzalez's discriminatory treatment based on Ms. Maxwell's pregnancy. Specifically, Ms. Maxwell complained about Mr. Gonzalez's inappropriate sexual comments and commands for her to disregard her doctor's instructions so she could keep moving and not slow down. Scott McCloud responded to Ms. Maxwell's complaint

by telling her how disappointed he was that she brought this to his attention. Dade Paper undertook no investigation or action in response to Ms. Maxwell's complaint.

45. On 25 October 2016, Ms. Maxwell informed Robert Gonzalez she was requesting a meeting with one of Dade Paper's human resource officers to address the ongoing discriminatory treatment, but was unable to participate in such a meeting because her doctor placed her on strict bed rest on 27 October 2016. Seven (7) days after this conversation, Dade Paper summarily fired Ms. Maxwell allegedly because her former employer had asserted a non-compete agreement which had not prevented Dade Paper from pursuing a client specifically mentioned by the former employer.

46. Dade Paper's alleged reason for terminating Ms. Maxwell's employment is pretextual and baseless. Dade Paper fired Ms. Maxwell because of her earlier complaints of pregnancy discrimination and her inability to continue working in the weeks preceding her delivery due to doctor ordered bed rest.

47. Ms. Maxwell suffered damages as a result of Dade Paper's unlawful retaliatory actions, including emotional distress, past and future lost wages and benefits, and the cost of bringing this action.

48. Dade Paper intentionally violated Ms. Maxwell's rights under Title VII, with malice or reckless indifference, and, as a result, is liable for punitive damages.

### THIRD CAUSE OF ACTION: ADA
**Retaliation in Violation of Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112(a), (b)(5).**

49. Plaintiff re-alleges and incorporates paragraphs 1 thru 48 as if fully set forth herein.

50. Dade Paper discriminated against Ms. Maxwell due to a pregnancy-related medical disability that periodically impaired her ability to perform her job due to pain and discomfort.

51. Upon information and belief, Dade Paper did not discriminate against non-pregnant employees with medical conditions that caused similar disabilities to those suffered by Ms. Maxwell.

52. Dade Paper also discriminated against Ms. Maxwell by refusing to provide her with reasonable accommodations of her pregnancy-related medical disability such as forbidding her from taking a break from driving in order to alleviate the pain and discomfort caused by her disability or to otherwise moderate her activity in response to her doctor's orders. Further, Dade Paper provided accommodations to its non-pregnant employees who suffered from limitations that were similar to those suffered by Ms. Maxwell.

53. Ms. Maxwell suffered damages as a result of Dade Paper's unlawful discrimination and failure to accommodate her disability, including emotional distress, past and future lost wages and benefits, and the cost of bringing this action.

54. Dade Paper intentionally violated Ms. Maxwell's rights under the ADA with malice or reckless indifference, and, as a result, is liable for punitive damages.

**FOURTH CAUSE OF ACTION:  State Law Claim**
**Unlawful Employment Practices in Violation of**
**South Carolina's Human Affairs Law, S.C. Code § 1-13-80(A)**

55. Plaintiff re-alleges and incorporates paragraphs 1 thru 54 as if fully set forth herein.

56. South Carolina law prohibits Dade Paper from discriminating against Ms. Maxwell based on her sex, including pregnancy-based discrimination.

57. South Carolina further prohibits employers such as Dade Paper from retaliating against an employee because she has exercised her rights to be free from unlawful discrimination in the work place.

58. As set forth above, Dade Paper discriminated against Ms. Maxwell due to her pregnancy and pregnancy-related disability which is violative of the South Carolina Human Affairs Law.

59. Dade Paper also discriminated against Ms. Maxwell by retaliating against her when she complained about the pregnancy-based discrimination rather than investigating her complaints in good faith and taking appropriate action regarding the investigation's findings.

60. Ms. Maxwell suffered damages as a result of Dade Paper's unlawful discrimination and retaliation, including emotional distress, past and future lost wages and benefits, and the cost of bringing this action.

61. Dade Paper intentionally violated Ms. Maxwell's rights under the SCHAL with malice or reckless indifference, and, as a result, is liable for punitive damages.

## FIFTH CAUSE OF ACTION:  State Law Claim
### Outrage

62. Plaintiff re-alleges and incorporates paragraphs 1 thru 61 as if fully set forth herein.

63. Ms. Maxwell reported she was suffering from pregnancy-related pain from the beginning of August 2016 until her termination early the following November.  She documented the pregnancy-related pain and its medical causes verbally and with notes from her doctors.

64. Ms. Maxwell's supervisor, Robert Gonzalez, personally witnessed bouts of Ms. Maxwell's debilitating pain while driving and Ms. Maxwell reported the pain to other Dade Paper employees.

65. Despite its knowledge of the condition, Dade Paper refused to accommodate Ms. Maxwell's condition and continuously urged her to keep moving and working despite the pain so that she would not "slow down" or "lose momentum."

66.     Robert Gonzalez would marginalize Ms. Maxwell and her condition by calling her "mommy" and making unwanted sexual and pregnancy-related comments to her despite her repeated requests to stop such offensive talk.

67.     Dade Paper terminated Ms. Maxwell after her physician had placed her on strict bed rest for the very condition Dade Paper had urged her to ignore.

68.     Dade Paper's conduct toward Ms. Maxwell is so extreme and outrageous as to exceed all possible bounds of decency and is utterly intolerable in a civilized community that recognizes that pain is indicative of a medical problem and should be treated by a competent medical professional whose recommendations and treatments should not be ignored.

69.     Dade Paper's refusal to grant Ms. Maxwell reasonable accommodations of her pregnancy-related disability caused her emotional distress that compounded her existing concerns about her pregnancy and professional career.  Without reasonable accommodations to minimize her pain the discomfort, Ms. Maxwell routinely endure prolonged physical pain while performing her professional obligations.  Having to endure prolonged physical pain that could have been easily mitigated or avoided with the common-sense precautions suggested by her physician, Dade Paper caused Ms. Maxwell emotional distress and a feeling of hopelessness that no reasonable person should have to endure.

70.     Ms. Maxwell suffered damages as a result of Dade Paper's outrageous conduct including emotional distress, past and future lost wages and benefits, and the cost of bringing this action.

71.     Dade Paper intentionally subjected Ms. Maxwell to Robert Gonzalez's outrageous comments and commands with malice or reckless indifference, and, as a result, is liable for punitive damages.

15

**SIXTH CAUSE OF ACTION:  State Law Claim**
**Defamation**

72. Plaintiff re-alleges and incorporates each and every allegation set forth above as if fully set forth herein.

73. Ms. Maxwell immediately informed her supervisor, Robert Gonzalez, when she received correspondence from a former employer, Xpedx, asserting an alleged non-compete agreement.  Ms. Maxwell informed Mr. Gonzalez she planned to obtain a legal opinion about the validity of the alleged agreement because it was not executed by Xpedx nor returned to her.

74. Rather than directly responding to the Xpedx, Mr. Gonzalez instructed Ms. Maxwell on how to "get around" a non-compete using a strategy Dade Paper had used before.  Ms. Maxwell refused to participate in Mr. Gonzalez's proposal.  At no time did anyone associated with Dade Paper contact Xpedx or explore the validity of the alleged agreement.

75. Although Ms. Maxwell informed Dade Paper that she contested the validity of the document Xpedx asserted as a non-compete, Dade Paper terminated Ms. Maxwell's employment without responding to Xpedx or determining whether the non-compete was valid.

76. Upon information and belief, Dade Paper publicized Ms. Maxwell's termination to former clients and co-workers and the alleged basis of the termination.

77. Dade Paper's statements about the termination tends to harm Ms. Maxwell's business reputation and lower her in the estimation of the community in which she works.

78. The termination also created a false and defamatory insinuation that Dade Paper knew Ms. Maxwell had breached the alleged non-compete agreement with Xpedx.

79. Ms. Maxwell is entitled to general damages for the injury Dade Paper caused her reputation, mental suffering, hurt feelings, emotional distress, and similar injuries which may not

be capable of definite money valuation. Ms. Maxwell is also entitled to damages for lost income, injuries to her career and professional reputation, and lost job opportunities.

## JURY DEMAND AND PRAYER FOR RELIEF

a. Award compensatory damages sustained by Plaintiff Courtney E. Maxwell against Defendant Dade Paper & Bag, LLC in an amount to be determined at trial.

b. Award attorneys' fees and costs and expert fees as provided for in 42 U.S.C. § 1981 and §1983 as well as Fed. R. Civ. Pr. 54(d)(1).

c. Award punitive damages as provided for in 42 U.S.C. § 1981.

d. Award such other and further relief as this Court may deem just and proper.

**THE PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY.**

          **THE PHILLIPS FIRM, LLC**
          **ATTORNEY & COUNSELOR AT LAW**

          /s/ Robert B. Phillips_____
          Robert B. (Sam) Phillips, Federal ID 7938
          sam@phillipsfirm.net
          1025 Calhoun Street
          Columbia, SC 29201
          803.726.4268

          **GLEISSNER LAW FIRM, LLC**

          /s/ Richard R. Gleissner_____
          Richard R. Gleissner, Federal ID 5389
          rick@gleissnerlaw.com
          1237 Gadsden Street, Suite 200A
          Columbia, SC 29201
          803.787.0505

          **ATTORNEYS FOR PLAINTIFF**

September 10, 2017
Columbia, South Carolina